## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

Case No.:

06-20012
CIV-LENARD
/ KLEIN

------------------------------------------------------x
NOKIA CORPORATION, a                          :
Finnish corporation,                          :
                                              :
                    *Plaintiff*,              :
                                              :
        v.                                    :
                                              :
PAN OCEAN COMMUNICATIONS, INC.,               :
a Florida corporation, SAMAR MUNIR,           :
an individual, and SYED M. HUSSAIN,           :
an individual,                                :
                                              :
                    *Defendants*.             :
------------------------------------------------------x



### VERIFIED COMPLAINT

For its Verified Complaint against defendants, Pan Ocean Communications, Inc.,

Samar Munir, and Syed M. Hussain, plaintiff, Nokia Corporation, by its attorneys, alleges as

follows:

### NATURE OF THE ACTION

1.      Plaintiff Nokia Corporation brings this action against the above-named corporate

and individual defendants for injunctive relief and damages arising out of the their infringement

and counterfeiting of the famous NOKIA trademark in violation of (1) Section 32 of the Lanham

Act, 15 U.S.C. § 1114; (2) false designation of origin and unfair competition under § 43(a) of the

Lanham Act, 15 U.S.C. § 1125(a); (3) federal dilution under § 43(c) of the Lanham Act, 15

U.S.C. § 1125(c); (4) common law trademark infringement under Florida law; (4) common law

unfair competition under Florida law; (5) dilution under Fla. Stat. § 495.151 *et seq.*; and (6) violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204 *et seq*.

## THE PARTIES

2.      Nokia Corporation is a public limited liability company incorporated under the laws of the Republic of Finland, with a principal executive office located at Keilalahdentie 4, PO Box 226, FIN-00045 Nokia Group, Espoo, Finland.  For purposes of pleading, any reference to "Nokia" means Nokia Corporation and its subsidiaries on a consolidated basis.

3.      Upon information and belief, Pan Ocean Communications, Inc. is a Florida corporation, with a business address at 3375 C NW 55th St., Ft. Lauderdale, Fl 33309, and operates from 6601 Lyons Road, Coconut Creek, Florida 33073 as well as from 4975 N. State Rd. 7, Fort Lauderdale, Florida 33319.

4.      Upon information and belief, Samar Munir is a resident of Florida residing at 5986 NW 66th Way, Parkland, Florida, and the President of Pan Ocean Communications, Inc.

5.      Upon information and belief, Syed M. Hussain is a resident of Florida also residing at 3375 C NW 55th St., Ft. Lauderdale, Fl 33309, and is the Vice President of Pan Ocean Communications, Inc.  Upon further information and belief, Syed M. Hussain is the registered agent of Pan Ocean Communications, Inc., with a registered office located at Pan Ocean Communications, Inc.'s business address.

6.      For purpose of pleading only, Pan Ocean Communications, Inc., together with Samar Munir and Syed M. Hussain will collectively, hereinafter be referred to as "Pan Ocean," or the "Pan Ocean Defendants."

7.     Upon information and belief, Samar Munir and Syed M. Hussain have directed, controlled, ratified and participated in, or are the moving, conscious forces behind the wrongful acts complained of herein by Pan Ocean for the gain of Pan Ocean and for their own individual gain, insofar as they personally took part in the respective infringing activities or specifically directed their agents or employees to do so, and are therefore, personally liable.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over the claims in this action pursuant to 15 U.S.C. § 1121; and 28 U.S.C. §§ 1331, 1332, and 1367.  This action arises under the Lanham (Trademark) Act, 15 U.S.C. §§ 1051, *et. seq.* and includes substantial and related state laws claims joined with its federal trademark claims.  Upon information and belief, there is also complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9.     Supplemental jurisdiction is appropriate over the state law claims pursuant to 28 U.S.C. § 1367, as they are so related to the federal claims that they form part of the same case or controversy.

10.    This Court has personal jurisdiction over each of the defendants.  Upon information and belief, Pan Ocean is a Florida corporation, and defendants Samar Munir and Syed Hussain are residents of the State of Florida.  Upon further information and belief, each of the defendants are engaged in substantial activity within the State of Florida.

11.    Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(a) and (c), because based upon information and belief, all defendants reside in the same State, and at least one of the individual defendants resides in this judicial district.  Upon information and belief, the

3

Pan Ocean corporate defendant has sufficient contacts with this judicial district to subject it to personal jurisdiction if this judicial district were a separate state pursuant to §1391(c). Furthermore, upon information and belief, a substantial part of the events or omissions giving rise to the federal claims occurred in this judicial district.

## FACTS COMMON TO ALL COUNTS

### Nokia's Business and the Famous NOKIA Trademark

12.     During Nokia's approximate 140 year history, Nokia has evolved from its origins in the paper industry to become a world leader in mobile communications and the world's largest manufacturer of mobile devices by connecting people to each other and the information that matters to them with mobile devices and solutions for voice, data, imaging, games, multimedia and business applications. Nokia also provides equipment, solutions and services for its operator and enterprise customers.

13.     Nokia's mobile devices are now used by virtually every demographic segment of the population, as devices for communications, business, a source of entertainment and even as fashion accessories. According to a survey published in July 2004 by Interbrand, the NOKIA brand was recognized as the eighth most valued brand in the world. Upon information and belief, there will be approximately 2 billion subscribers to Nokia's mobile devices by the end of 2005. For 2004, Nokia's net sales totaled 39.6 billion (USD) and net profit was 4.3 billion (USD).

14.     Nokia serves a diverse range of customers, ranging from mobile network operators, distributors, independent retailers to enterprise customers, across a variety of markets.

4

15.     Certain mobile network operators require mobile devices to be customized to their specifications, by requesting certain preferred features, functionalities or design, together with co-branding with the network operator's brand.  Customization is an important element in gaining increased operator customer satisfaction and Nokia works together with operators on product planning as well as accelerating product hardware and software customization programs.

16.     Upon information and belief, the ability to offer segmented, differentiated and customizable mobile devices for consumers, enterprises and operators is an increasingly competitive requirement.  For example, the Entry unit of Nokia's Mobile Phones business group aims to provide affordable mobile phones while cooperating with local mobile operators in creating attractively priced service packages, including the NOKIA 1100 mobile phone.

### *TracFone's Prepaid Wireless Service Business*

17.     Upon information and belief, TracFone Wireless, Inc., a subsidiary of América Móvil, markets the TracFone, an off-the-shelf, pay-as-you-go, prepaid wireless service.  The TracFone prepaid phones, which are equipped with patented technology that allows customers to keep track of their spending at all times, are sold through major retailers and on-line as well.

18.     Upon information and belief, some TracFone prepaid phones are compatible with Global System for Mobile Communications (GSM), the most successful global mobile technology for mobile phones and digital cellular networks with more than one billion subscribers, which offers the widest selection of mobile services and mobile terminals currently available.  GSM is designed to deliver high-quality and secure mobile voice and data services to mobile users.  Upon information and belief, its success is based on its inherent support for roaming and interoperability across a number of different networks and across a number of different countries.

5

19.    Upon information and belief, by offering GSM handsets and entering into agreements with all major US wireless carriers, TracFone can offer its customers nationwide coverage.

20.    Upon information and belief, TracFone mobile phones have a unique "Airtime Balance Display" that shows its customers how many minutes they have used, how many minutes are left, and when its customers need to purchase and add more airtime, so that its customers can control their costs.  With the TracFone service, you buy the phone and prepay for your minutes as you need them by purchasing TracFone Prepaid Wireless Airtime cards.  Thus, TracFone wireless service is a combination of units (minutes) and active service.  To make or receive a call, its customers must have both.

21.    TracFone mobile phones are sold in a distinctive clear plastic clam shell packaging that prominently displays both the TRACFONE and NOKIA trademarks and includes the TracFone activation guide and Nokia instruction manual.  *See* Exhibit A annexed hereto and made a part hereof.

22.    Upon further information and belief, in order to activate TracFone service for GSM-compatible phones, customers must insert a Subscriber Identity Module (SIM) card. TracFone customers need a TracFone serial number and a SIM serial number during the activation process.

23.    Upon information and belief, in order for TracFone's customers to activate their phones, TracFone handsets compatible with GSM require SIM cards to be inserted into the handset that meet TracFone criteria.

6

*Nokia and TracFone Arrangement*

24.     Nokia and TracFone have entered into an arrangement whereby TracFone either directly or through its retail customers is able to offer its customers NOKIA phones that incorporate the proprietary TracFone prepaid wireless technology so that NOKIA phones can be sold with SIM cards that meet TracFone criteria, and with TracFone Prepaid Wireless Airtime cards.

25.     Based upon this arrangement, certain NOKIA phones are manufactured and configured by Nokia to include TracFone's proprietary prepaid wireless technology. Furthermore, NOKIA phones with the TracFone prepaid wireless technology, such as the 1100 model, are manufactured for TracFone with a unique configuration that enables TracFone to offer its customers a unique SIM serial number during the activation process that is compatible with a SIM card that works on TracFone's system only.

26.     Currently, the NOKIA 2126, NOKIA 2600, NOKIA 1100, NOKIA 1221, NOKIA 2285, and the NOKIA 5100 models are available with SIM cards that meet TracFone criteria, and with TracFone Prepaid Wireless Airtime cards through TracFone and its retailers.  All of the NOKIA cellular models available with SIM cards that meet TracFone criteria, and with TracFone Prepaid Wireless Airtime cards are co-branded with the NOKIA and TRACFONE trademarks prominently displayed on the phone.

27.     A "snap shot" of the exterior of the Nokia 1100 model mobile phone available through TracFone with a SIM card that meets TracFone criteria, and with a TracFone Prepaid Wireless Airtime card, depicting the NOKIA and TRACFONE trademarks prominently, appears below.



*The NOKIA® Trademark*

28.    Since the early 1980s, Nokia and its predecessors-in-interest have used NOKIA as its principal name and trademark.  Nokia is the owner of several U.S. trademark registrations with the United States Patent and Trademark Office ("PTO") covering a wide range of electronics and telecommunications products and related services, including mobile telephones and mobile telephone accessories.  Two of the Certificates of Registration issued to Nokia by the PTO are attached hereto as Exhibit B and made part hereof (*e.g.*, NOKIA (U.S. Reg. No. 2,676,153), and NOKIA (U.S. Registration No. 1,570,492).  Each of these registrations are now outstanding, validly subsisting and uncancelled, and Nokia is the owner thereof.  Furthermore, an Affidavit of Incontestability was accepted in connection with NOKIA® (U.S. Registration No. 1,570,492) on or about June 13, 1999, pursuant to Section 15 of the Trademark Act of 1946, 15 U.S.C. § 1065.  Therefore, this registration has achieved incontestable status.

8

29.     Nokia has established a valuable reputation and goodwill in its NOKIA trademark by reason of its long use, and extensive promotion and advertising under the NOKIA trademark. Advertisements for NOKIA mobile phones regularly appear in newspapers and magazines distributed throughout the United States and are extensively advertised on television as well. Nokia's 2004 global advertising and marketing expenditures were in excess of $1.3 billion dollars.  In addition, the network service providers that sell NOKIA mobile phones in connection with their services also spend many millions of dollars each year on advertising that prominently display NOKIA phones.

30.     As a result of Nokia's extensive marketing, advertising and sales efforts, the general public and the trade have come to exclusively associate the NOKIA trademark with Nokia and products originating with, sponsored by, connected with, or otherwise approved by Nokia.

31.     The NOKIA mark has been in continuous use in the United States since the early 1980s, and had already become distinctive, well-known, and famous among the general public since long prior to when the Pan Ocean Defendants began any of the activities complained of herein.

### *Pan Ocean Defendants' Infringing Activities*

32.     Upon information and belief, Pan Ocean's customers include, among others, those seeking to purchase wireless phones for resale, as opposed to one's own personal use.

33.     Upon information and belief, at the point of purchase, Pan Ocean asks customers seeking to purchase NOKIA 1100 TracFone mobile phones for resale whether they want to purchase them "locked" or "unlocked," meaning they wanted to know whether they were to disable the TracFone proprietary prepaid calling card software so that the NOKIA 1100 phones

9

would now be able to operate using a non-TracFone enabled SIM card and therefore, be used with any available mobile service provider.

34.     Upon information and belief, if a customer asked that the NOKIA 1100 TracFone mobile phone be "unlocked," Pan Ocean would electronically disable the TracFone proprietary prepaid calling card software and reset the phone's setting so that such phones no longer require SIM cards that meet TracFone criteria and no longer operate with its Prepaid Wireless Airtime cards when activated by customers.

35.     Upon information and belief, in filling its orders for "unlocked" NOKIA 1100 mobile phones, Pan Ocean materially alters them by removing the TracFone mobile phones from their packaging and discarding the TracFone activation guide, electronically disabling the TracFone proprietary prepaid calling card software, resetting the phone's setting so that such phones no longer require SIM cards that meet TracFone criteria and no longer operate with its Prepaid Wireless Airtime cards when activated by customers.  Upon further information and belief, Pan Ocean sometimes obliterates the TRACFONE trademark printed on the bottom of the phone whereas other times the mark is not removed.  Once the NOKIA 1100 TracFone mobile phone is unlocked, upon information and belief, it is then repackaged in counterfeit packaging that is an intentional and calculated reproduction of the genuine NOKIA 1100 packaging, together with a NOKIA charger and battery wrapped in cellophane, and a NOKIA 1100 operating manual.  Attached as Exhibit C and made part hereof is a photograph of a repackaged NOKIA 1100 TracFone mobile phone on which the TracFone trademark has been obliterated and the phone repackaged in a counterfeit NOKIA box.

*Irreparable Injury to Nokia*

36.     Upon information and belief, Pan Ocean purchases NOKIA 1100 TracFone mobile phones in large quantities from retailers such as Wal-Mart, Target and Sam's Club for approximately $20 per phone, a highly discounted price because TracFone subsidizes the cost of the phones since it derives its revenue from the fees generated by the prepaid wireless service. Upon further information and belief, the typical retail price for a NOKIA 1100 mobile phone to be used with post paid service is between $79 and $89.

37.     Upon information and belief, after the Pan Ocean Defendants "unlock" the NOKIA 1100 TracFone mobile phones and repackage them in either genuine or counterfeit NOKIA boxes, they resell the phones to distributors, wholesalers, exporters, flea market booth operators, and others for approximately $39.00, as genuine authorized NOKIA 1100 mobile phones to be used in connection with post paid wireless service. Upon further information and belief, the customers of the Pan Ocean Defendants, in turn, resell the phones at a profit to consumers passing them off as genuine authorized NOKIA 1100 phones, when they are not.

38.     The Nokia limited one year warranty provided with the NOKIA 1100 TracFone mobile phone is non-transferable and is voided if "the Product has been subjected to . . . unauthorized modification, unauthorized connections, unauthorized repair . . . or other acts which are not the fault of Nokia . . . ." *See* Exhibit D annexed hereto and made a part hereof. The unlocking of the NOKIA 1100 TracFone mobile phones and repackaging thereof by the Pan Ocean Defendants voids Nokia's warranty such that consumers who purchase the phones believing them to be genuine authorized NOKIA phones will not be able to have them repaired or replaced by Nokia under the warranty, thereby causing consumers to become disappointed,

{W:\03289\6003092000\00609179.DOC *032896003092000* }

dissatisfied and disillusioned with Nokia and its products such that such consumers may not purchase NOKIA products in the future, all to the irreparable injury of Nokia.

## COUNT I – COUNTERFEITING IN VIOLATION OF SECTION 32 OF THE LANHAM ACT (15 U.S.C. § 1114)

39.    Nokia repeats and re-alleges each and every allegation set forth herein in paragraphs 1 through 38 as if fully set forth herein.

40.    Without the consent of Nokia, upon information and belief, the Pan Ocean Defendants use a spurious mark which is identical with, or substantially indistinguishable from, the registered trademark NOKIA on and in connection with the manufacture, advertising, promotion, distribution, offering for sale, or sale of materially altered NOKIA 1100 TracFone mobile phones that have been repackaged in counterfeit NOKIA boxes, which use by the Pan Ocean Defendants is likely to cause confusion, or to cause mistake, or to deceive, in that consumers are likely to believe that said mobile phones are genuine NOKIA mobile phones, when they are not.

41.    Without the consent of Nokia, upon information and belief, the Pan Ocean Defendants have copied the distinctive packaging for the NOKIA 1100 mobile phones as shown in Exhibit C and annexed hereto and made part hereof, and in doing so have counterfeited the registered trademark NOKIA by applying the mark to such counterfeit boxes used in connection with the sale, offering for sale, distribution or advertising of materially altered NOKIA 1100 TracFone mobile phones, which use by the Pan Ocean Defendants is likely to cause confusion, or to cause mistake, or to deceive, as a result of applying the counterfeit mark to said boxes, as the term "counterfeit" is defined under Section 45 of the Lanham Act, 15 U.S.C. § 1127.

12

42.     The Pan Ocean Defendants' acts complained of herein constitute counterfeiting of the registered trademark NOKIA in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

43.     Upon information and belief, the Pan Ocean Defendants' acts complained of herein have been committed with knowledge that such infringement and counterfeiting is intended to cause confusion, or to cause mistake, or to deceive, and such acts therefore constitute willful infringement and counterfeiting.

44.     By reason of the aforesaid acts and conduct, Nokia has suffered, is suffering, and will continue to suffer irreparable damage, and unless the Pan Ocean Defendants are enjoined from continuing their wrongful acts, the damage to Nokia will increase.

45.     Nokia has no adequate remedy at law.

## COUNT II – EXPRESS PALMING OFF AND FEDERAL TRADEMARK INFRINGEMENT IN VIOLATION OF SECTION 32 OF THE LANHAM ACT (15 U.S.C. § 1114)

46.     Nokia repeats and re-alleges each and every allegation set forth herein in paragraphs 1 through 45 as if fully set forth herein.

47.     Without the consent of Nokia, the Pan Ocean Defendants each use the registered trademark NOKIA in interstate commerce on and in connection with the sale, offering for sale, distribution or advertising of materially altered NOKIA 1100 TracFone mobile phones that have been repackaged in counterfeit NOKIA 1100 packaging, and passing off said mobile phones as genuine NOKIA 1100 mobile phones for use in connection with post paid network service such that the advertising, promotion, offering for sale and sale of said mobile phones is likely to cause confusion, mistake, and/or deception on the part of the consuming public such that they are

13

likely to mistakenly believe that the materially altered NOKIA 1100 TracFone mobile phones as so repackaged emanate from or are somehow endorsed, approved, or authorized by NOKIA, when they are not.

48.     Each of the Pan Ocean Defendants' respective acts complained of herein constitute express passing off and federal trademark infringement of the registered trademark NOKIA in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

49.     Upon information and belief, each of the Pan Ocean Defendants' respective acts complained of herein have been committed with knowledge that such infringement and imitation is intended to cause confusion, or to cause mistake, or to deceive, such that those acts therefore constitute willful infringement.

50.     By reason of the aforesaid acts and conduct, Nokia has suffered, is suffering, and will continue to suffer irreparable damage, and unless each of the Pan Ocean Defendants is enjoined from continuing their wrongful acts, the damage to Nokia will increase.

51.     Nokia has no adequate remedy at law.

## COUNT III – FALSE DESIGNATION OF ORIGIN IN VIOLATION OF SECTION 43 OF THE LANHAM ACT

52.     Nokia repeats and re-alleges each and every allegation set forth herein in paragraphs 1 through 51 as if fully set forth herein.

53.     Each of the Pan Ocean Defendants' respective acts complained of herein violate Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), because they are advertising, promoting, offering for sale and selling materially altered NOKIA 1100 TracFone mobile phones that have been repackaged in counterfeit NOKIA 1100 packaging and passing off those mobile phones as genuine NOKIA 1100 mobile phones for use in connection with post paid network

14

service, when they are not, such that the advertising, promotion, offering for sale and sale of said mobile phones is likely to cause confusion, mistake, and/or deception on the part of the consuming public such that they are likely to mistakenly believe that the materially altered NOKIA 1100 TracFone mobile phones as repackaged, emanate from or are somehow endorsed, approved, or authorized by Nokia, when they are not.

54.     Upon information and belief, each of the Pan Ocean Defendants' respective acts complained of herein have been committed with knowledge that such infringement and imitation is intended to be used to cause confusion, or to cause mistake, or to deceive, such that those acts therefore constitute willful infringement.

55.     By reason of the aforesaid acts and conduct, Nokia has suffered, is suffering, and will continue to suffer irreparable damage, and unless each of the Pan Ocean Defendants are enjoined from continuing their wrongful acts, the damage to Nokia will increase.

56.     Nokia has no adequate remedy at law.

## COUNT IV – FEDERAL DILUTION IN VOLATION OF SECTION 43(C) OF THE LANHAM ACT

57.     Nokia repeats and re-alleges each and every allegation set forth herein in paragraphs 1 through 56 as if fully set forth herein.

58.     Prior to the acts of the Pan Ocean Defendants as herein alleged, Nokia's trademark NOKIA, had become famous and well-known throughout the United States.

59.     The public associates and identifies the NOKIA trademark as used in connection with NOKIA products as originating exclusively with Nokia.

60.     Each of the Pan Ocean Defendants' adoption and use of the NOKIA trademark in interstate commerce dilutes the distinctive quality of Nokia's trademark NOKIA by diminishing

{W:\03289\6003092000\00609179.DOC *03289600309200* }

the capacity of the trademark NOKIA to identify and distinguish Nokia's products in violation of 15 U.S.C. § 1125(c).

61.     Any dilution or blurring of the identity and exclusivity of Nokia's famous NOKIA trademark is detrimental to Nokia's hard-won reputation and its ability to market its products.

62.     Upon information and belief, each of the Pan Ocean Defendants' respective acts complained of herein have been committed with knowledge that such use of the famous NOKIA trademark is intended to trade on the NOKIA brand and Nokia's reputation and goodwill associated therewith, thereby diluting the famous NOKIA trademark.

63.     By reason of the aforesaid acts and conduct, Nokia has suffered, is suffering, and will continue to suffer irreparable damage, and unless each of the Pan Ocean Defendants are enjoined from continuing their wrongful acts, the damage to Nokia will increase.

64.     Nokia has no adequate remedy at law.

## COUNT V – COMMON LAW TRADEMARK INFRINGEMENT UNDER FLORIDA LAW

65.     Nokia repeats and re-alleges each of the allegations contained in paragraphs 1 through 64 as if fully set forth herein.

66.     Each of the Pan Ocean Defendants' aforesaid activities constitute trademark infringement in violation of the common law of the State of Florida.

67.     Each of the Pan Ocean Defendants have been using the NOKIA trademark in connection with materially altered NOKIA 1100 TracFone mobile phones and counterfeit NOKIA packaging, with full knowledge of NOKIA's prior use of the NOKIA trademark and with full knowledge that they have no authority to use the NOKIA trademark in connection with materially altered NOKIA 1100 TracFone mobile phones and the packaging therefor.

{W:\03289\6003092000\00609179.DOC *03289603092000* }

68.    The Pan Ocean Defendants' conduct has been for the willful and calculated purpose of misappropriating and trading upon Nokia's goodwill and business reputation at Nokia's expense and at no expense to the Pan Ocean Defendants.

69.    Nokia has suffered, is suffering, and will continue to suffer, irreparable damage to the goodwill accumulated in its NOKIA trademark unless the Pan Ocean Defendants are restrained.

70.    Nokia has no adequate remedy at law.

## COUNT VI – COMMON LAW UNFAIR COMPETITION
## UNDER FLORIDA LAW

71.    Nokia repeats and re-alleges each of the allegations contained in paragraphs 1 through 70 as if fully set forth herein.

72.    Each of the Pan Ocean Defendants' aforesaid acts and condutc constitute unfair competition in violation of the common law of the State of Florida.

73.    Each of the Pan Ocean Defendants have been using the infringing marks with full knowledge of Nokia's prior use of the NOKIA trademark and with full knowledge that the Pan Ocean Defendants have no authority to use the NOKIA trademark in connection with materially altered NOKIA 1100 TracFone mobile phones and the packaging therefor.

74.    The Pan Ocean Defendants' respective conduct has been for the willful and calculated purpose of misappropriating and trading upon Nokia's goodwill and business reputation at Nokia's expense and at no expense to the Pan Ocean Defendants.

75.    Nokia has suffered, is suffering, and will continue to suffer, irreparable damage to the goodwill accumulated in its NOKIA trademark unless the Pan Ocean Defendants are enjoined from continuing their wrongful acts and conduct.

76.     Nokia has no adequate remedy at law.

## COUNT VII – TRADEMARK DILUTION UNDER FLORIDA LAW

77.     Nokia repeats and re-alleges each of the allegations contained in paragraphs 1 through 76 as if fully set forth herein.

78.     Each of the Pan Ocean Defendants' aforesaid acts and conduct constitute violations of Fla. Stat. § 495.151 *et seq.* in that their respective activities are likely to dilute the uniqueness and/or distinctiveness of the famous NOKIA trademark.

79.     Each of the Pan Ocean Defendants' aforesaid acts and conduct have decreased the commercial value of the famous NOKIA trademark.

80.     Nokia has suffered, is suffering, and will continue to suffer, irreparable damage to the goodwill accumulated in its NOKIA trademark unless the Pan Ocean Defendants are enjoined from continuing their wrongful acts and conduct.

81.     Nokia has no adequate remedy at law.

## COUNT VIII – VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

82.     Nokia repeats and re-alleges each of the allegations contained in paragraphs 1 through 81 as if fully set forth herein.

83.     Without the consent of Nokia, the Pan Ocean Defendants use the trademark NOKIA on and in connection with the sale, offering for sale, distribution or advertising of materially altered NOKIA 1100 TracFone mobile phones and counterfeit NOKIA packaging therefor, and such use by each is likely to cause confusion, or to cause mistake, or to deceive, as a result of the identical nature of the mark in connection with said materially altered NOKIA 1100 TracFone mobile phones.

18

84.     Each of the Pan Ocean Defendants' acts complained of herein constitute intentional palming or passing off such that consumers will believe that the materially altered NOKIA 1100 TracFone mobile phones emanate from or are somehow endorsed, approved or authorized by Nokia, when they are not.

85.     Defendants aforesaid acts constitute violations of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204 *et seq*.

86.     By reason of the aforesaid acts and conduct, Nokia has suffered, is suffering, and will continue to suffer irreparable damage, and unless each of the Pan Ocean Defendants are enjoined from continuing their wrongful acts, the damage to Nokia will increase.

87.     Nokia has no adequate remedy at law.

**WHEREFORE**, Plaintiff seeks judgment as follows:

A.     Preliminarily, during the pendency of this action, and permanently after entry of a final judgment, the Pan Ocean Defendants, their agents, servants, employees, attorneys and all others in active concert or participation with said Defendants, be permanently enjoined from:

1.     Using the NOKIA trademark or any counterfeit or colorable imitation thereof, on and in connection with the manufacture, advertising, promotion, distribution, offering for sale or sale of altered NOKIA TracFone mobile phones and the packaging therefor or on and in connection with any other altered NOKIA products;

2.     Disabling or "unlocking" the TracFone proprietary prepaid wireless calling card software installed on NOKIA mobile phones, resetting the internal settings thereof, and repackaging said mobile phones in counterfeit NOKIA boxes, and reselling them as genuine NOKIA mobile phones for use in connection with post paid network service;

19

3.     Doing any other act or thing likely to, or calculated to, induce the belief that "unlocked" NOKIA TracFone mobile phones are authorized by, originate with, or are in any way sponsored by Nokia in violation of the Lanham Act, 15 U.S.C. § 1125(a) *et seq*., the Florida Deceptive and Unfair Trade Practices, Fla. Stat. §501.204 *et seq.*, or the common law.

4.     Causing the dilution, blurring or tarnishment of the NOKIA trademark in violation of 15 U.S.C. §1125(c) or under Florida law, Fla. Stat. § 495, 151 *et seq.*

B.     Within ten (10) days after the entry of an order for preliminary injunction, and thereafter permanent injunction, the Pan Ocean Defendants be required to notify in writing each of its former and current customers and the retail stores from where the NOKIA TracFones mobile phones were purchased by the Pan Ocean Defendants as to the entry of the Court's injunction against using the NOKIA trademark or any counterfeit or colorable imitation thereof on or in connection with the manufacture, advertising, promotion, distribution, offering for sale or sale of altered NOKIA TracFone mobile phones and repackaging of same in counterfeit NOKIA boxes.

C.     The Pan Ocean Defendants, their agents, servants, employees, attorneys and all others in active concert or participation with said Defendants be required in accordance with 15 U.S.C. § 1118 to immediately forfeit and deliver up for impoundment during the pendency of this action and thereafter destruction, any (1) devices, materials or things that have been used or are intended to be used in connection with materially altering NOKIA TracFones mobile phones by disabling the TracFone proprietary prepaid wireless software or other NOKIA products, (2) plates, molds, matrices, dies or other means of making counterfeit NOKIA packaging, (3) altered NOKIA TracFone mobile phones, and (4) all labels, letterhead, business cards, signs, prints,

{W:\03289\6003092000\00609179.DOC *03289600309200* }

boxes, packages, wrappers, receptacles, advertisements catalogs and the like in the Pan Ocean Defendants' possession, custody or control bearing the NOKIA trademark or any counterfeit or colorable imitation thereof used on and in connection with manufacture, advertising, promotion, distribution, offering for sale or sale of altered NOKIA TracFone mobile phones.

D.     The Pan Ocean Defendants shall pay to Plaintiff statutory damages pursuant to 15 U.S.C. §1117(c), which damages should be enhanced because the use of the counterfeit NOKIA trademark by Defendants was willful.

E.     The Pan Ocean Defendants shall account for and pay over to Plaintiff all gains, profits and advantages derived by them or any of them from their respective trademark infringements, trademark dilution, and unfair competition.

F.     The Pan Ocean Defendants shall pay as damages to Plaintiff for their conduct alleged herein a sum equal to three times the amount of the actual damages suffered by Plaintiff.

G.     The Pan Ocean Defendants shall pay an appropriate amount as punitive damages to Plaintiff to deter willful and wanton conduct such as theirs and to avoid future confusion or deception of the public and unfair competition with the Plaintiff.

H.     Awarding Plaintiff its attorneys' fees and costs incurred in this action.

I.     Awarding Plaintiff prejudgment interest on its judgments.

J.     The Pan Ocean Defendants be required in accordance with 15 U.S.C. § 1116 to file with the Court and serve on Nokia a report in writing under oath setting forth in detail the

21

manner and form in which preliminarily, and thereafter permanent said Defendants have complied with the terms of the injunction.

K.     Plaintiff to have such other and further relief as this Court deems just and equitable.

Dated: January 3, 2006                    Respectfully submitted,
        Maitland, Florida
                                          MICHAEL W.O. HOLIHAN, P.A.


                                          By: _____
                                              Michael W.O. Holihan
                                              Florida Bar No.: 782165
                                              Holihan Law
                                              1101 North Lake Destiny Road
                                              Suite 350
                                              Maitland, FL 32751
                                              Tel:    (407) 660-8575
                                              Fax:    (407) 660-0510
                                              Email: michael.holihan@holihanlaw.com

                                              *Attorneys for Plaintiff*
                                              NOKIA CORPORATION

*Of Counsel*
Robert S. Weisbein, Esq.
Atul R. Singh, Esq.
Jonathan Matkowsky, Esq.
DARBY & DARBY, P.C.
805 Third Avenue
New York, NY 10022
Tel:    (212) 527-7700
Fax:    (212) 527-7701
Email: rweisbein@darbylaw.com
        asingh@darbylaw.com
        jmatkowsky@darbylaw.com

*Attorneys for Plaintiff*
NOKIA CORPORATION

22

## VERIFICATION

I, Richard W. Stimson, President of Nokia Inc. and as procurist for Nokia Corporation, hereby declare under penalty of perjury under the laws of the United States of America that the facts set forth in the foregoing VERIFIED COMPLAINT filed in this action are true and correct, except for facts alleged to be true upon information and belief, and, as to those facts, I believe them to be true.

Executed on January _____3_____, 2006

_____
(signature)

# VERIFICATION

I, David S. Yamaguchi, Legal Counsel for Nokia Inc. and procurist for Nokia Corporation, hereby declare under penalty of perjury under the laws of the United States of America that the facts set forth in the foregoing VERIFIED COMPLAINT filed in this action are true and correct, except for facts alleged to be true upon information and belief, and, as to those facts, I believe them to be true.

Executed on January __3___, 2006

_____
(signature)

EXHIBIT "A"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

# ATTACHMENT(S) NOT SCANNED

## PLEASE REFER TO COURT FILE MAINTAINED IN THE OFFICE WHERE THE JUDGE IS CHAMBERED

## CASE NO. 06-20012-CV-LENARD
## DE#1

☐   **DUE TO POOR QUALITY, THE ATTACHED DOCUMENT IS NOT SCANNED**

_____

☐ VOLUMINOUS (exceeds 999 pages = 4 inches)
consisting of (boxes, notebooks, etc.)_____
☐ BOUND EXTRADITION PAPERS
☐ ADMINISTRATIVE RECORD (Social Security)
☐ ORIGINAL BANKRUPTCY TRANSCRIPT
☐ STATE COURT RECORD (Habeas Cases)
☐ SOUTHERN DISTRICT TRANSCRIPTS
☐ LEGAL SIZE
☐ DOUBLE SIDED
X PHOTOGRAPHS **(EXHIBITS A & C)**
☐ POOR QUALITY (e.g. light print, dark print, etc.)
☐ SURETY BOND (original or letter of undertaking)
☐ CD's, DVD's, VHS Tapes, Cassette Tapes
☐ OTHER = _____

EXHIBIT "B"

Int. Cls.: 1, 9, 11, 16, 21, 24 and 25

Prior U.S. Cls.: 2, 6, 13, 21, 26, 29, 33, 34, 37,
    39 and 42

Reg. No. 1,570,492

# United States Patent and Trademark Office

Registered Dec. 12, 1989

## TRADEMARK
### PRINCIPAL REGISTER

## NOKIA

*Renewed*

NOKIA CORPORATION (FINLAND CORPORA-
    TION)
MIKONKATU 15A
HELSINKI, FINLAND

FOR: HOUSE MARK FOR A FULL LINE OF
CHEMICAL PREPARATIONS FOR THE PULP
AND PAPER, TEXTILE, CLAY INDUSTRIES,
FOR FRESH AND WASTE WATER TREAT-
MENT FOR INDUSTRY AND FOR MUNICIPAL
WATER SYSTEMS; SPECIALTY CHEMICALS
FOR USE IN THE MANUFACTURE OF PHAR-
MACEUTICALS, THE PURIFICATION OF OR-
GANIC COMPOUNDS, THE PRECIPITATION
OF METALS, IN VAT DYEING PROCESSES
AND AS A REDUCING AGENT, IN CLASS 1
(U.S. CL. 6).

FOR: TELEVISIONS, MONITORS, VIDEO
TAPE RECORDERS, SATELLITE RECEIVERS,
RADIO SPEAKERS AND PARTS THEREFOR,
ELECTRONIC EQUIPMENT, NAMELY LAND-
MOBILE AND MARITIME RADIO TELE-
PHONES, BASE RELAY STATIONS AND
PORTABLE RELAY STATIONS FOR MOBILE,
PUBLIC OR SPECIAL TELEPHONE NET-
WORKS, TWO WAY COMMUNICATIONS AP-
PARATUS, PAGING RECEIVERS, APPARATUS
FOR SCRAMBLING VOICE TRANSMISSIONS,
DATA TERMINALS FOR USE IN VEHICLES
OR TOGETHER WITH RADIO TELEPHONES
AND PARTS FOR ALL OF THE ABOVE; DIGI-
TAL EXCHANGES, PULSE CODE MODULA-
TION APPARATUS, RADIO LINKS, DEDICAT-
ED COMMUNICATIONS NETWORKS; TELE-
PHONE EXCHANGES; DATA PROCESSORS;
CASH REGISTERS, MODEMS; MODULAR DIG-

ITAL MULTIPLEX APPARATUS, ELECTRI-
CAL CONDUCTORS, WIRING HARNESSES,
COVERED ELECTRIC WIRE, ELECTRICAL
CABLES AND WIRING DUCTS FOR ELEC-
TRIC CABLES; INSULATED TELECOMMUNI-
CATION CABLES; ELECTRICAL CONDUITS;
CAPACITORS, ELECTRICAL COILS AND RE-
SISTORS; OPTICAL FIBERS AND CABLES;
SAFETY GLOVES; REGULATION AND CON-
TROL APPARATUS AND INSTRUMENTS FOR
RESIDENTIAL HEATING SYSTEMS, LOW
AND INTERMEDIATE VOLTAGE APPARA-
TUS, NAMELY, CONTACTORS, RELAYS,
SWITCHES, FUSES, DISCONNECTORS,
BREAKERS, INSTRUMENT TRANSFORMERS,
POWER TRANSFORMERS, SWITCH GEARS AS
PART OF MACHINES AND SUBSTATIONS, IN
CLASS 9 (U.S. CLS. 21 AND 26).

FOR: ELECTRIC LIGHTING FIXTURES
AND SUSPENSION RAILS AND CONTACT
TRACKS THEREFOR; PIPES AND DUCTS FOR
VENTILATING AND FOR AIR-CONDITION-
ING OR FOR WATER FILTERING OR FOR
SANITARY INSTALLATIONS; ELECTRIC
HEATERS FOR DOMESTIC AND INDUSTRIAL
USE, IN CLASS 11 (U.S. CLS. 13, 21 AND 34).

FOR: PAPER AND CARDBOARD ARTICLES,
NAMELY TOILET PAPER, HOUSEHOLD
PAPER TOWELS, FACE TISSUES, HANDKER-
CHIEFS, TABLE CLOTHS, TABLE MATS AND
TABLE NAPKINS, IN CLASS 16 (U.S. CL. 37).

FIRST USE 1-0-1967; IN COMMERCE
9-0-1981.

FOR: PAPER PLATES AND CUPS, HOUSE-
HOLD PAPER TOWEL HOLDERS, TOILET
PAPER HOLDERS, SERVIETTE HOLDERS,

1,576,492

TOWEL RACKS, PLASTIC CUPS AND THEIR LIDS; PLATES, SAUCERS, BOWLS, DRINKING GLASSES AND COFFEE CUPS OF PAPER OR OF PLASTIC, HOUSEHOLD CONTAINERS, WORK GLOVES OF PLASTIC, IN CLASS 21 (U.S. CLS. 2, 13, 29 AND 33).

FOR: NON-WOVEN FABRICS FOR USE IN MANUFACTURING TABLE CLOTHS, NAP-KINS, BEDCLOTHES, CLOTHING; TABLE CLOTHS AND TABLE NAPKINS MADE OF TEXTILE OR OF NON-WOVEN FABRICS, IN CLASS 24 (U.S. CL. 42).

FOR: BOOTS, SHOES, SLIPPERS; GLOVES, IN CLASS 25 (U.S. CL. 39).

OWNER OF FINLAND REG. NO. 52776, DATED 7-22-1968, EXPIRES 12-12-1998.

OWNER OF U.S. REG. NOS. 1,038,579 AND 1,245,386.

SER. NO. 639,694, FILED 1-14-1987.

MICHAEL HAMILTON, EXAMINING ATTOR-NEY

Int. Cl.: 9

Prior U.S. Cls.: 21, 23, 26, 36 and 38

## United States Patent and Trademark Office

Reg. No. 2,676,153

Registered Jan. 21, 2003

## TRADEMARK
### PRINCIPAL REGISTER

# NOKIA

NOKIA CORPORATION (FINLAND CORPORATION)
KEILALAHDENTIE 4
02150 ESPOO, FINLAND

FOR: TELEPHONES, CORDLESS, WIRELESS OR SATELLITE TELEPHONES, DEDICATED NETWORK COMPUTER TERMINALS FOR TELECOMMUNICATIONS, FACSIMILES, COMMUNICATORS; SMART PHONES, NAMELY, PHONES WITH CAPABILITY OF TRANSMITTING DATA VOICE AND IMAGES AND ACCESSING THE INTERNET, SENDING AND RECEIVING FAXES AND E-MAIL; PAYPHONES, PUBLIC TELEPHONES; ANTENNAS, BATTERIES, BATTERY CHARGERS, POWER SUPPLIES, HOUSINGS OR CASINGS OR COVERS, CLIPS, CARRYING CASES FOR MOBILE TELEPHONES, PDAS AND COMPUTERS AND CARRYING CASES FOR ACCESSORIES THEREFOR, NAMELY, MICROPHONES, SPEAKERS, HEADSETS, BATTERIES, COVERS AND BATTERY CHARGERS; HOLDERS, DESKTOP STANDS, MICROPHONES, SPEAKERS, HEADSETS, MOBILE PHONE ACCESSORIES IN THE NATURE OF HANDS FREE HOLDERS, HEADSETS, MICROPHONES AND SPEAKERS FOR MOBILE PHONES; CAR KITS FOR THE ADAPTATION OF PORTABLE COMMUNICATION APPARATUS AND INSTRUMENTS FOR VEHICULAR USE, COMPRISING ANTENNAS, ANTENNA TRANSMISSION WIRES, ANTENNA ADAPTERS, CABLES, EARPHONES, HANDSFREE MICROPHONES, PHONE HOLDERS, SPEAKERS, CAR CHARGERS, DATA CABLES AND ELECTRICAL WIRES; TELEPHONE STANDS BEING PARTS OF TELEPHONES, ELECTRIC ADAPTOR CABLES, TELEPHONE CABLES, MICROPHONES, SPEAKERS AND BATTERY CHARGERS; APPARATUS FOR RECORDING, STORING, TRANSMISSION, RECEIVING OR REPRODUCING OF DATA, SOUND, IMAGES AND/OR VIDEO, NAMELY, BASE STATIONS COMPRISING DIRECTIONAL ANTENNAS, ELECTRONIC BASE STATION CONTROLLERS, DIRECTIONAL ANTENNAS, MICROWAVE RADIOS, TELEPHONE

EXCHANGES, ACCESS NODES, SWITCHES FOR TELECOMMUNICATION PURPOSES, SERVERS, ROUTERS, DATA SMART CARDS, MODEMS, MULTIPLEXERS; ELECTRICAL CABLES AND OPTICAL FIBERS CABLES; ELECTRONIC SYSTEMS AND APPARATUS, NAMELY, SCRAMBLERS, DESCRAMBLERS, ENCODERS AND DECODERS, FOR SCRAMBLING, DESCRAMBLING, ENCODING AND/OR DECODING OF VOICE, DATA, IMAGE AND VIDEO TRANSMISSIONS, ELECTRONIC DATA INPUT AND OUTPUT APPARATUS, NAMELY TERMINALS, RECEIVERS, TRANSMITTERS, DECODERS, AND TRANSCEIVERS CAPABLE OF PROCESSING BROADCAST, SATELLITE, FACSIMILE, TELEVISION, TELECOMMUNICATION, NETWORK, INFRARED, VIDEO GAME, AND COMPUTER DATA SIGNALS AND FOR TRANSMISSION, REPRODUCING OR RECEIVING OF SOUND, IMAGES, VIDEO, MULTIMEDIA OR DATA; DATA PROCESSING EQUIPMENT, NAMELY DIGITAL SIGNAL PROCESSORS; COMPUTERS, COMPUTER SOFTWARE AND PROGRAMS USED FOR TRANSMISSION OR REPRODUCING OR RECEIVING OF SOUND, IMAGES, VIDEO OR DATA OVER A TELECOMMUNICATIONS NETWORK OR SYSTEM BETWEEN TERMINALS AND FOR ENHANCING AND FACILITATING USE AND ACCESS TO COMPUTER NETWORKS AND TELEPHONE NETWORKS AND THERE BETWEEN; COMPUTER SOFTWARE FOR USE IN GENERAL PURPOSE DATABASE MANAGEMENT; COMPUTER E-COMMERCE SOFTWARE TO ALLOW USER TO SAFELY PLACE ORDERS AND MAKE PAYMENTS IN THE FIELD OF ELECTRONIC BUSINESS TRANSACTIONS VIA A GLOBAL COMPUTER NETWORK OR TELECOMMUNICATIONS NETWORK; TRAINING AND PRODUCT SUPPORT SOFTWARE FOR COMPUTERS AND MOBILE PHONES IN THE FIELD OF COMMUNICATIONS; COMPUTER UTILITY SOFTWARE FOR PERFORMING COMPUTER MAINTENANCE WORK; COMPUTER GAME SOFTWARE; COMPUTER SOFTWARE AND PROGRAMS FEATURING MUSIC, MOVIES, ANIMATION, ELECTRONIC BOOKS, GAMES IN THE FIELD OF

GENERAL ENTERTAINMENT; POWER SOURCES FOR COMMUNICATION NETWORK ELEMENTS, NAMELY BATTERIES AND POWER SUPPLIES; SUBSTATIONS OR REPEATERS, NAMELY SIGNAL AMPLIFIERS OR REPEATER AMPLIFIERS; MULTIMEDIA SYSTEMS, NAMELY SOFTWARE FOR THE DISTRIBUTION OF INFORMATION AND INTERACTIVE CONTENT CONTAINING TEXT, IMAGES, VIDEO AND SOUND TO USERS IN THE FIELD OF COMMUNICATIONS AND MULTIMEDIA TERMINALS FOR COMPUTERS; SATELLITE, CABLE AND/OR TERRESTRIAL RECEIVERS AND ANTENNAS, SWITCHES AND MOTORS THEREOF; MONITORS, DISPLAYS FOR MOBILE PHONES; USER INTERFACE UNITS, NAMELY KEYBOARDS, KEYPADS, KEY ROLLS, BUTTONS, SWITCH-BOARDS AND SCREENS; COMPUTER SOFTWARE AND PROGRAMS FOR MANAGEMENT AND OPERATION OF WIRELESS TELECOMMUNICATIONS DEVICES, COMPUTER SOFTWARE FOR ACCESSING, SEARCHING, INDEXING AND RETRIEVING INFORMATION AND DATA FROM GLOBAL COMPUTER NETWORKS AND GLOBAL COMMUNICATION NETWORKS, AND FOR BROWSING AND NAVIGATING THROUGH WEB SITES ON SAID NETWORKS, AND COMPUTER SOFTWARE FOR SENDING AND RECEIVING SHORT MESSAGES AND ELECTRONIC MAIL AND FOR FILTERING NON-TEXT INFORMATION FROM THE DATA; ANALOG AND DIGITAL RADIO TRANSCEIVERS OR RECEIVERS FOR DATA, VOICE, IMAGE AND VIDEO COMMUNICATION; ELECTRONIC GAME SOFTWARE FOR MOBILE HANDSETS; CAMERAS, NAMELY PHOTOGRAPHIC CAMERAS, DIGITAL CAMERAS, MOTION PICTURE CAMERAS, VIDEO CAMERAS; SYSTEMS AND APPARATUS FOR ELECTRIC MONEY TRANSACTIONS, NAMELY SMART CARDS, SMART CARD READERS; CALCULA-TORS; CARDS FOR COMMUNICATIONS PURPOSES, NAMELY, DATA CARDS, MODEM CARDS AND FAX MODEM CARDS FOR COMMUNICATION PURPOSES, ALL FOR USE WITH COMMUNICATIONS APPARATUS; ELECTRONIC PUBLICATIONS, NAMELY, COMPUTER USER MANUALS RECORDED ON COMPUTER MEDIA; BLANK AUDIO AND VIDEO CASSETTES, TAPES, CD'S; PRE-RECORDED AUDIO AND VIDEO CASSETTES, TAPES AND CD'S FEATURING MUSIC, MOVIES, ANIMATION, ELECTRONIC BOOKS, VIDEO GAMES; AUDIO AND VIDEO TAPE, CASSETTE, DIGITAL VIDEO DISC (DVD), VIDEO-CD (VCD), CD-I, LASER DISC, MINIDISCS, MP3 AND CD RECORDERS AND PLAYERS AND THEIR PERIPHERALS FEATURING ENTERTAINMENT, INFORMATION, MULTIMEDIA MATERIAL, MANUALS AND INSTRUCTIONAL MATERIAL; TELEVISIONS; HEADPHONES; BINOCULARS; SUNGLASSES; EYEGLASSES; MOUSE PADS; STAND ALONE VIDEO GAME MACHINES; BURGLAR AND FIRE ALARMS; STEREO EQUIPMENT, NAMELY STEREO RECEIVERS AND AMPLIFIERS, CD, MP3 AND MINIDISC PLAYERS AND SPEAKERS, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

PRIORITY CLAIMED UNDER SEC. 44(D) ON FINLAND APPLICATION NO. T200001860, FILED 5-30-2000, REG. NO. 220980, DATED 6-15-2001, EXPIRES 6-15-2011.

OWNER OF U.S. REG. NOS. 1,570,492 AND 1,734,209.

SER. NO. 76-083,447, FILED 7-6-2000.

VIVIAN MICZNIK FIRST, EXAMINING ATTORNEY

EXHIBIT "C"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

# ATTACHMENT(S) NOT SCANNED

# PLEASE REFER TO COURT FILE MAINTAINED IN THE OFFICE WHERE THE JUDGE IS CHAMBERED

## CASE NO. 06-20012-CV-LENARD
## DE#1

☐ **DUE TO POOR QUALITY, THE ATTACHED DOCUMENT IS NOT SCANNED**

_____

☐ VOLUMINOUS (exceeds 999 pages = 4 inches)
consisting of (boxes, notebooks, etc.)_____
☐ BOUND EXTRADITION PAPERS
☐ ADMINISTRATIVE RECORD (Social Security)
☐ ORIGINAL BANKRUPTCY TRANSCRIPT
☐ STATE COURT RECORD (Habeas Cases)
☐ SOUTHERN DISTRICT TRANSCRIPTS
☐ LEGAL SIZE
☐ DOUBLE SIDED
X PHOTOGRAPHS **(EXHIBITS A & C)**
☐ POOR QUALITY (e.g. light print, dark print, etc.)
☐ SURETY BOND (original or letter of undertaking)
☐ CD's, DVD's, VHS Tapes, Cassette Tapes
☐ OTHER = _____

EXHIBIT "D"

# 7 Nokia One-Year Limited Warranty

Nokia Inc. ("Nokia") warrants that this cellular phone ("Product") is free from defects in material and workmanship that result in Product failure during normal usage, according to the following terms and conditions:

1 The limited warranty for the Product extends for ONE (1) year beginning on the date of the purchase of the Product. This one year period is extended by each whole day that the Product is out of your possession for repair under this warranty.

2 The limited warranty extends only to the original purchaser ("Consumer") of the Product and is not assignable or transferable to any subsequent purchaser/end-user.

3 The limited warranty extends only to Consumers who purchase the Product in the United States of America.

4 During the limited warranty period, Nokia will repair, or replace, at Nokia's sole option, any defective parts, or any parts that will not properly operate for their intended use with new or refurbished replacement items if such repair or replacement is needed because of product malfunction or failure during normal usage. No charge will be made to the Consumer for any such parts. Nokia will also pay for the labor charges incurred by Nokia in repairing or replacing the defective parts. The limited warranty does not cover defects in appearance, cosmetic, decorative or structural items, including framing, and any non-operative parts. Nokia's limit of liability under the limited warranty shall be the actual cash value of the Product at the time the Consumer returns the Product for repair, determined by the price paid by the Consumer for the Product less a reasonable amount for usage. Nokia shall not be liable for any other losses or damages. These remedies are the Consumer's exclusive remedies for breach of warranty.

5 Upon request from Nokia, the Consumer must prove the date of the original purchase of the Product by a dated bill of sale or dated itemized receipt.

6 The Consumer shall bear the cost of shipping the Product to Nokia in Melbourne, Florida. Nokia shall bear the cost of shipping the Product back to the Consumer after the completion of service under this limited warranty.

7 The Consumer shall have no coverage or benefits under this limited warranty if any of the following conditions are applicable:

a) The Product has been subjected to abnormal use, abnormal conditions, improper storage, exposure to moisture or dampness, unauthorized modifications, unauthorized connections, unauthorized repair, misuse, neglect, abuse, accident, alteration, improper installation, or other acts which are not the fault of Nokia, including damage caused by shipping.

b) The Product has been damaged from external causes such as collision with an object, or from fire, flooding, sand, dirt, windstorm, lightning, earthquake or damage from exposure to weather conditions, an Act of God, or battery leakage, theft, blown fuse, or improper use of any electrical source, damage caused by computer or internet viruses, bugs, worms, Trojan Horses, cancelbots or damage caused by the connection to other products not recommended for interconnection by Nokia.

c) Nokia was not advised in writing by the Consumer of the alleged defect or malfunction of the Product within fourteen (14) days after the expiration of the applicable limited warranty period.

d) The Product serial number plate or the accessory data code has been removed, defaced or altered.

e) The defect or damage was caused by the defective function of the cellular system or by inadequate signal reception by the external antenna, or viruses or other software problems introduced into the Product.

8 Nokia does not warrant uninterrupted or error-free operation of the Product. If a problem develops during the limited warranty period, the Consumer shall take the following step-by-step procedure:

a) The Consumer shall return the Product to the place of purchase for repair or replacement processing.

b) If a "is not convenient because of distance (more than 50 miles) or for other good cause, the Consumer shall ship the Product prepaid and insured to:
Nokia Inc., Attn: Repair Department
795 West Nasa Blvd.
Melbourne, FL 32901

c) The Consumer shall include a return address, daytime phone number and/or fax number, complete description of the problem, proof of purchase and serial number (if applicable). Expenses related to removing the Product from an installation are not covered under this limited warranty.

d) The Consumer will be billed for any parts or labor charges not covered by this limited warranty. The Consumer will be responsible for any expenses related to reinstallation of the Product.

e) Nokia will repair the Product under the limited warranty within 30 days after receipt of the Product. If Nokia cannot perform repairs covered under this limited warranty within 30 days, or after a reasonable number of attempts to repair the same defect, Nokia at its option, will provide a replacement Product or refund the purchase price of the Product less a reasonable amount for usage. In some states the Consumer may have the right to a loaner if the repair of the Product takes more than ten (10) days. Please contact the Customer Service Center at Nokia at the telephone number listed at the end of this warranty if you need a loaner and the repair of the Product has taken or is estimated to take more than ten (10) days.

Copyright © Nokia 2003
Copyright © Nokia 2003

f)   If the Product is returned during the limited warranty period, but the problem with the Product is not covered under the terms and conditions of this limited warranty, the Consumer will be notified and given an estimate of the charges the Consumer must pay to have the Product repaired, with all shipping charges billed to the Consumer. If the estimate is refused, the Product will be returned freight collect. If the Product is returned after the expiration of the limited warranty period, Nokia's normal service policies shall apply and the Consumer will be responsible for all shipping charges.

9   You (the Consumer) understand that the product may consist of refurbished equipment that contains used components, some of which have been reprocessed. The used components comply with Product performance and reliability specifications.

10   ANY IMPLIED WARRANTY OF MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE OR USE, SHALL BE LIMITED TO THE DURATION OF THE FOREGOING LIMITED WRITTEN WARRANTY. OTHERWISE, THE FOREGOING LIMITED WARRANTY IS THE CONSUMER'S SOLE AND EXCLUSIVE REMEDY AND IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED. NOKIA SHALL NOT BE LIABLE FOR SPECIAL, INCIDENTAL, PUNITIVE OR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO LOSS OF ANTICIPATED BENEFITS OR PROFITS, LOSS OF SAVINGS OR REVENUE, LOSS OF DATA, PUNITIVE DAMAGES, LOSS OF USE OF THE PRODUCT OR ANY ASSOCIATED EQUIPMENT, COST OF CAPITAL, COST OF ANY SUBSTITUTE EQUIPMENT OR FACILITIES, DOWNTIME, THE CLAIMS OF ANY THIRD PARTIES, INCLUDING CUSTOMERS, AND INJURY TO PROPERTY, RESULTING FROM THE PURCHASE OR USE OF THE PRODUCT OR ARISING FROM BREACH OF THE WARRANTY, BREACH OF CONTRACT, NEGLIGENCE, STRICT TORT, OR ANY OTHER LEGAL OR EQUITABLE THEORY, EVEN IF NOKIA KNEW OF THE LIKELIHOOD OF SUCH DAMAGES. NOKIA SHALL NOT BE LIABLE FOR DELAY IN RENDERING SERVICE UNDER THE LIMITED WARRANTY, OR LOSS OF USE DURING THE PERIOD THAT THE PRODUCT IS BEING REPAIRED.

11   Some states do not allow limitation of how long an implied warranty lasts, so the one year warranty limitation may not apply to you (the Consumer). Some states do not allow the exclusion or limitation of incidental and consequential damages, so certain of the above limitations or exclusions may not apply to you (the Consumer). This limited warranty gives the Consumer specific legal rights and the Consumer may also have other rights which vary from state to state.

12   Nokia neither assumes nor authorizes any authorized service center or any other person or entity to assume for it any other obligation or liability beyond that which is expressly provided for in this limited warranty including the provider or seller of any extended warranty or service agreement.

13   This is the entire warranty between Nokia and the Consumer, and supersedes all prior and contemporaneous agreements or understandings, oral or written, relating to the Product, and no representation, promise or condition not contained herein shall modify these terms.

14   This limited warranty allocates the risk of failure of the Product between the Consumer and Nokia. The allocation is recognized by the Consumer and is reflected in the purchase price.

15   Any action or lawsuit for breach of warranty must be commenced within eighteen (18) months following purchase of the Product.

16   Questions concerning this limited warranty may be directed to:
Nokia Inc.
Attn: Customer Service
7725 Woodland Center Blvd., Ste. 150
Tampa, FL 33614
Telephone: 1-888-NOKIA-2U (1-888-665-4228)
Facsimile: (813) 287-6612
TTY/TDD Users Only: 1-800-24-NOKIA (1-800-246-6542)

17   The limited warranty period for Nokia supplied attachments and accessories is specifically defined within their own warranty cards and packaging.

Copyright © Nokia 2003

Copyright © Nokia 2003

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

06-20012

CIV-LENARD

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I.(a) PLAINTIFFS

Nokia Corporation, a Finnish corporation

## DEFENDANTS

Pan Ocean Communications, Inc., a Florida corporation, Samar Munir, an individual, and Syed M. Hussain, an individual

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Espoo
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  Dade County
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

*Dade | 06-20012 CV-Lenard | Klein*

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Michael W.O. Holihan, Holihan Law, 1101 N. Lake Destiny Road, Suite 350, Maitland, FL 32751  (407) 660-8575

ATTORNEYS (IF KNOWN)

**(d)** CIRCLE COUNTY WHERE ACTION AROSE: (DADE,) MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1  Original Proceeding

☐ 2  Removed from State Court

☐ 3  Remanded from Appellate Court

☐ 4  Reinstated or Reopened

☐ 5  Transferred from another district (specify)

☐ 6  Multidistrict Litigation

☐ 7  Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | B☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury – Med Malpractice | B☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | B☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury Product Liability | B☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | ☐ 368 Asbestos Personal Injury Product Liability | B☐ 640 R.R. & Truck | **A PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | B☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| B☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | B☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | B☐ 690 Other | ☒ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **A LABOR** | **B SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | B☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| B☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | B☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | A☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | A☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | B☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | A☐ 871 IRS – Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | B☐ 550 Civil Rights | | | A OR B |
| | | B☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Claims for damages and injunctive relief for trademark infringement in violation of the Lanham Act, 15 U.S.C. §1114; false designation of origin and unfair competition under §43(a) of the Lanham Act, 15 U.S.C. §1125(c); common law trademark infringement, unfair competition, and dilution under Florida law.

LENGTH OF TRIAL via _5_ days estimated (for both sides to try entire case)

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION** ☐ UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ YES  ☒ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE  Honorable Cecilia M. Altonaga

DOCKET NUMBER  05-23279-CIV-ALTONAGA

DATE
January 3, 2006

SIGNATURE OF ATTORNEY OF RECORD

Michael W.O. Holihan

FOR OFFICE USE ONLY

RECEIPT # _(39741_  AMOUNT _250_  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____